## Case No. 16,268.

### UNITED STATES v. SHAW–MUX.

[2 Sawy. 364;[1] 5 Chi. Leg. News, 352.]

District Court, D. Oregon. March 27, 1873.

INTERCOURSE BETWEEN INDIANS — INDIAN GIVING LIQUOR TO INDIAN.

1. Congress has the power to regulate intercourse between Indian tribes and the members thereof, and may therefore prohibit the traffic in spirituous liquors between such tribes or members, within as well as without the limits of a state.

2. The word "person" in section 20 of the intercourse act of June 30, 1834 (4 Stat. 729), as amended by the act of March 15, 1864 (13 Stat. 29), includes an Indian, and under such section an Indian may be punished for disposing of spirituous liquors to another Indian.

[Cited in U. S. v. Winslow, Case No. 16,742.]

This indictment charges that the defendant, at Umatilla county, on November 24, 1872, did dispose of spirituous liquor to an Indian, one Moo-los-le-wick, who was then and there under the charge of an Indian agent of the United States. On the trial it appeared that the defendant was an Indian living on the Umatilla reservation, at the time of the commission of the alleged crime. The defendant being convicted, moved for a new trial, upon the ground that the court erred in charging the jury that an Indian was a "person" within the meaning of that term, as used in section twenty of the intercourse act of 1834, as amended by the act of March 15, 1864 (13 Stat. 29). The section in question provides: "That if any person shall * * * dispose of any spirituous liquor * * * to any Indian under the charge of any superintendent or agent appointed by the United States, * * * such person, on conviction thereof," shall be imprisoned, etc.

Addison C. Gibbs, for the United States.

William B. Gilbert, for defendant.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

DEADY, District Judge. The word "person" in its ordinary sense includes an Indian, whether he be uncivilized, under the charge of an Indian agent, in the Indian country, or otherwise. The burden then is upon the defendant to show that, although he is plainly within the letter of the statute, he is not within the true intent and meaning thereof.

The argument in his behalf is, that the principal power of congress in the premises does not extend to the regulation or control of conduct or intercourse between Indians, within the limits of a state, and therefore the statute should be construed so as to exclude this case, which is one of intercourse between Indians only.

The constitution gives congress power "to regulate commerce * * * with the Indian tribes," and this includes any member of such tribe within as well as without the limits of a state. U. S. v. Holliday, 3 Wall. [70 U. S.] 418.

In U. S. v. Tom, 1 Or. 26, the defendant was an Indian, and was indicted and convicted under this section for selling liquor to Indians. The case was argued and considered at length, but this precise question does not appear to have been raised. But the fact could not have escaped the attention of the counsel and the court, and the inference is, that it was not deemed material.

Commerce, intercourse with an Indian tribe, or the individual members thereof, may be carried on with or by means of Indians as well as white men. The power of congress is not limited to the regulation of commerce between the Indian tribes and white people or any particular people or persons, but extends to commerce, with such tribes or any member thereof, however carried on.

Suppose it should be deemed necessary by congress to regulate the intercourse between two distinct Indian tribes, as, for instance, to prohibit the one from furnishing the other ammunition, would not this be a regulation of commerce with an Indian tribe? Because the regulation would necessarily affect both tribes, and therefore the commerce, in this respect, between them, it would be none the less a regulation of commerce with either of them.

In U. S. v. Holliday, supra, the court say, that "commerce with the Indian tribes means commerce with the individuals composing those tribes." This being so, it follows that, if congress can regulate the commerce between different tribes, it may also between individual Indians. Other considerations make it probable that this word person was used in this section with intent to include Indians. In other sections of the act (sections 7 and 8, 4 Stat. 729), the intention not to include Indians in the word person, is manifested as follows: "If any person other than an Indian shall," etc.

By section three of the act of March 27, 1854 (10 Stat. 270), it was enacted that noth-

ing contained in this section (twenty), "which provides for the punishment of offenses therein specified, shall be construed to extend to any Indian committing said offenses in the Indian country."

What particular circumstance, if any, led to the enactment of this clause, does not appear, but it is probable that either the word "person" had been construed to include Indians, or in the nature of things would be, in the absence of any provision to the contrary. But in the revision and re-enactment of the section in 1862 (12 Stat. 339), and 1864 (supra), its operation, so far as the disposition of liquor to Indians is concerned, was limited to Indians under charge of a superintendent or agent, whether within or without the Indian country, and the provision of the act of 1854, restraining the natural signification of the word "person" was not inserted; so that the section stands in this respect as it did prior to the passage of said act.

It being premised that congress has the power to regulate the disposition of spirituous liquors to an Indian by whomsoever such disposition is made, in considering the question of whether congress intended to include Indians in the word "person" as used in this section, weight ought to be given to the argument of convenience.

Upon all the Indian reservations in the country, Indians will be found, if permitted to do so with impunity, through whom white men will be able to introduce spirituous liquor among the Indians, with comparative security to themselves. The traffic can scarcely be prevented unless the Indians who are employed as go-betweens are held to be within the purview of the law prohibiting it.

The motion is denied.