UNITED STATES v. HIGGINS, County Treasurer.

(Circuit Court, D. Montana. August 30, 1901.)

No. 575.

INDIANS—TAXATION.
> One whose father is a white person, and a naturalized citizen, is not an Indian for purpose of taxation, though his mother is a half-breed Indian, and when he is 17 years old goes with her children to an Indian reservation, and has granted her application to be admitted as a member of the tribe, and thereafter lives on the reservation.

Wm. B. Rodgers, U. S. Atty.

Marshall, Stiff & Ranft and Denny & Nolan, for defendant.

KNOWLES, District Judge. This is a suit brought by the United States against George Higgins, the treasurer and tax collector of Missoula county, Mont., to enjoin him from collecting a tax from one Oliver Gibeau. It appears from the evidence in this case that said Gibeau is the owner of a number of horses and cattle ranging upon the Flathead Indian reservation, sometimes called the Jocko Indian reservation, in the state of Montana; that in the year 1897 one W. R. Hamilton, the then assessor of said Missoula county, listed the said property as that of said Gibeau for taxation, and that state and county

110 F.—39

taxes were assessed upon the same. Said assessment was duly returned upon the proper assessment roll of said county for said year to the then tax collector of said county. Said Gibeau refused to pay said taxes, and after the same became delinquent said George Higgins, as the then treasurer and tax collector of said county, seized certain live stock, the property of said Gibeau, and advertised the same for sale at public auction, with a view to realizing sufficient money to pay said taxes, penalty, and the costs of collection. The government brought this suit for the purpose of enjoining this sale, alleging that said Gibeau is an Indian, and its ward. No contention has been made that the United States cannot maintain this suit if such is the fact. The defendant contends that said Gibeau should be classed as a white man, and not as an Indian, and, as that part of the Flathead Indian reservation where said Gibeau resides lies within the exterior boundaries of Missoula county, he should list his property and be taxed in and by that county. It appears from the evidence in this case that Oliver Gibeau was born in Missoula county, Mont., in the year 1866; that his father was a white man, and a native of Canada, who, in 1877, became a citizen of the United States by naturalization. It also appears from the evidence that Oliver Gibeau's mother was a half-breed Indian woman; her father being a white man, and her mother a Spokane Indian. The father of Gibeau settled upon public land of the United States near Frenchtown, in said Missoula county, and afterwards entered the same in the proper land office of the United States. The mother resided with the father upon this land until 1883, when, with her children, she went to the Flathead Indian reservation, and made application to be admitted as a member of the Flathead Indian Nation. This application was granted. Gibeau was about 17 years of age at the time of going upon the reservation with his mother, and has grown up to manhood there, and has become the chief of the Indian police on that reservation. The father went to live upon the reservation a year after his wife had removed there. The question is presented as to whether or not Oliver Gibeau should be classed as an Indian or a white man. Had he lived in the county of Missoula up to this time, I think he would certainly have been classed as a white man. He would have been entitled to the status of his father. He could have inherited, acquired, and held property. He could have located mining claims. Did the fact of his going upon the reservation with his mother, and adopting the habits of the Indians, change his status? I think not. While there are cases in which quarter-breed Indians have been recognized as Indians by the laws of congress and by the action of the executive department of the government, I cannot refer to any case where a person possessing but one-fourth Indian blood, and who was born among the white people, and lived among them until almost a man grown, has been classed as an Indian. If he had acquired real property, it would have been assessed for taxation and taxed. The fourteenth amendment to the constitution of the United States provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." Section

1992 of the Revised Statutes also provides: "All persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are declared to be citizens of the United States." It is stated by Mr. Justice Story, in his work on the Constitution, in regard to Indians:

"When, however, the tribal relations are dissolved, when the headship of the chief or the authority of the tribe is no longer recognized, and the individual Indian, turning his back upon his former mode of life, makes himself a member of the civilized community, the case is wholly altered. He then no longer acknowledges a divided allegiance. He joins himself to the body politic. He gives evidence of his purpose to adopt the habits and customs of civilized life. And, as his case is then within the terms of this amendment, it would seem that his right to protection in person, property, and privilege must be as complete as the allegiance to the government to which he must then be held; as complete, in short, as that of any other native-born inhabitant."

In the case of U. S. v. Hadley (C. C.) 99 Fed. 437, it is held that a half-breed Indian, raised among the white people as a white man, could not be classed as an Indian, although he had gone upon an Indian reservation to live, and had received an allotment of land in severalty. It has been held that a white man adopted into an Indian tribe by the rules and regulations thereof did not lose his status as a white man, or acquire that of an Indian. The mother of Oliver Gibeau could not, by taking him with her to an Indian tribe, and securing his adoption into the same, deprive her son of the rights of a white man and of a citizen. By Indian polity he might, by them, be classed as an Indian, but not by the constitution and laws of the United States. In the case of U. S. v. Higgins (heretofore decided) 103 Fed. 348, in which it was sought to enjoin said Higgins from collecting taxes from one Alexander Matt, the facts presented were essentially different. Matt was born in the "Indian country." His people never assumed the habits of civilization. It was not shown that his father ever was or became a citizen of the United States. He was one of the class recognized and treated as an Indian in the orders of the executive department of the government to the Flathead Indians to remove from the Bitter Root Valley to the present Flathead or Jocko Indian reservation. For these reasons the injunction heretofore issued should be dissolved, and the complainant's bill dismissed, and it is so ordered.