[No. 13077. Department One. December 18, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v.

N. H. CASE, *Appellant*.[1]

OFFICERS—"LIABILITIES"—CRIMINAL PROSECUTIONS—FALSE AUDITS—STATUTES—DEFENSES—INTENT. The use of the word "false" in connection with the word "fraudulent" in Rem. & Bal. Code, § 2381, making it a penal offense for a public officer to audit a claim against a county or city which is false or fraudulent, does not show a legislative intent to include only such claims as are corruptly false or acts done with willful design to cheat the public; hence it is not a defense to a prosecution under the statute that the jury found that a road supervisor had no intention to defraud, in auditing a claim for road work that he had fraudulently increased by carrying his own teams on the pay rolls in order to reimburse himself for work that he had done with his own teams in violation of law.

SAME — LIABILITIES—CRIMINAL PROSECUTIONS—INTENT—PRESUMPTIONS. The crime of submitting a false audit by a public officer, without intent to cheat, defined by Rem. & Bal. Code, § 2381, was not an offense at common law, and being an offense *malum prohibitum*, an intent to violate the law is implied from the fact of violation.

SAME. The fact that money received by a road supervisor upon a bill falsely or fraudulently audited by him, in violation of Rem. & Bal. Code, § 2381, came out of the same fund from which a true bill, if rendered, would have been paid to him for services performed, constitutes no defense to a prosecution for a violation of the statute; in view of Id., § 3918, requiring claims against a county to be filed so that they may be allowed upon their merits.

CRIMINAL LAW—APPEAL—HARMLESS ERROR. Error in the admission of immaterial and irrelevant testimony is not ground for reversal, where, in the light of the defendant's own evidence, it was not prejudicial.

CRIMINAL LAW — PUNISHMENT — DISCRETION — TECHNICAL GUILT. Upon indictment by a grand jury, the discretion of the trial judge in passing sentence is the only protection against the inequities of valid statutes afforded to one only technically guilty.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered April 27, 1915, upon a trial and conviction of falsely auditing claims. Affirmed.

[1]Reported in 153 Pac. 1070.

*Parker & Holden,* for appellant.

*Harold B. Gilbert,* for respondent.

CHADWICK, J.—Defendant was convicted in the court below of a violation of Rem. & Bal. Code, § 2381. It reads as follows:

"Every public officer or person holding or discharging the duties of any public office or place of trust under the state or in any county, town or city, a part of whose duty it is to audit, allow or pay, or take part in auditing, allowing or paying, claims or demands upon the state or such county, town or city, who shall knowingly audit, allow or pay, or directly or indirectly, consent to or in any way connive at the auditing, allowance or payment of any claim or demand against the state or such county, town or city, which is false or fraudulent, or contains any charge, item or claim which is false or fraudulent, shall be guilty of a gross misdemeanor."

Defendant was a road supervisor having charge of road construction work in Yakima county, and was charged with having carried his own teams upon the pay rolls made out, audited, and returned by him, in the names of other parties, and with having carried a greater number of teams upon the pay rolls than were actually employed in the work covered by the pay rolls.

It is admitted that the pay rolls, as prepared and certified by defendant, did not disclose the true facts, but it is claimed that defendant claimed no more than he had a right to claim against the county. His defense being that he had had certain road work done in his district and had paid for it out of his own pocket, and that he carried his own teams in the name of another and had put in a charge for extra teams not actually employed, so as to absorb the amounts due on his advances, and thus recoup his expenditures for the account of the county.

Defendant contends further, that, inasmuch as the county received a real service for the charges made, and there being no willful design on his part to violate the law or to work a

fraud upon the county, the judgment should not be sustained.

The jury found that defendant had no intention to defraud and recommended defendant to the extreme mercy of the court. It must have believed, as a mere matter of bookkeeping, that the defendant had received no more than he was entitled to, and the county had paid no more than it was bound to pay.

Counsel make an able argument to sustain the rule contended for, which is that the word "false," being used in connection with the word "fraudulent," indicates a purpose to include only such acts as are corruptly false, or are done with a willful design to cheat and defraud the public funds; that the jury having found no intent to defraud, we are limited to a consideration of the word "false" only. Many cases are cited to show that the word "false" has the meaning contended for, and it may be admitted that they were rightly decided. But the setting of a word in a statute is not the only test of its meaning.

The statute under which defendant was convicted was passed in 1909. At that time there were in existence statutes under which one making a false audit on a pay roll might have been convicted. In the criminal code passed that year, these statutes were preserved, and in addition thereto, the law quoted above was passed. It voices a public policy, a design to preserve a true record of all public works.

Acts in which the public have a direct interest, those touching the peace, safety, security, or welfare of the citizenry as distinguished from individual interest are frequently made penal by statute. In such cases, an intent to violate the law is implied from the fact of violation. *State v. Nicolls,* 61 Wash. 142, 112 Pac. 269, Ann. Cas. 1912 B. 1088; *State v. Burnan,* 71 Wash. 199, 128 Pac. 218; *State v. Cherry Point Fish Co.,* 72 Wash. 420, 130 Pac. 499.

In the last case cited, it was contended, there being no proof of a specific intent to violate the law, that a conviction could not be sustained. See page 424.

"It is not here denied, of course, that, where a specific intent is required by statute to constitute an offense, such specific intent is a part of the offense and must be alleged and proven before a conviction can be had. But where the statute makes it an offense to do a particular thing, and, like the one before us, is silent concerning the intent with which the thing is done, a person commits the offense when he does the forbidden thing, even if he had no evil or wrongful intent beyond that which is implied from the doing of the prohibited act."

Counsel seek to distinguish the rule of these cases by suggesting that it applies only in cases *malum prohibitum*, whereas the present charge is akin to the crime of "cheats" or "cheating" at common law, which was *malum in se*, and therefore a specific intent must be proven.

The crime of submitting a false audit without intent to cheat or defraud was not a crime at common law. Under the primary rules of construction, we may assume that the legislature intended to cure the mischief of the old law when it enacted the present statute. The act defined is made penal wholly in virtue of the statute, and is therefore *malum prohibitum*.

We do not hold, nor do we understand that our holding implies, that one who by mistake or accident, or honestly after the exercise of due care, makes a report that is false in the sense of being erroneous, would be guilty. The statute was designed to cover, and we think does cover, a state of facts such as we have before us, where the fact is knowingly and intentionally, or in negligent defiance of the law, certified to be other than it really is; where the party charged has done one thing and certified another.

Neither will the fact that the money received by defendant came out of the same fund from which his true bill, if rendered, would have been paid, excuse him. The law requires all persons having claims against a county to put them in form, showing what they represent, so that they may be allowed or disallowed upon their merits. Rem. & Bal. Code,

§ 3918 (P. C. 115 § 115). This, defendant should have done, instead of seeking to recover the money he had paid out by certifying that he had carried men and teams on a particular job when he had not.

Error is assigned in that immaterial and irrelevant testimony was admitted. Without granting that it was subject to the objections made, it will be enough to say of it that, in the light of defendant's own evidence, it was not prejudicial.

Defendant, as is attested by a number of witnesses, is an old and respected citizen of Yakima county and, like the jury who tried this case, we believe that he had no intent to defraud the county. However, his act falls within the prohibition of the law, and his lack of intent to defraud avails him nothing. As we said in the case of *State v. Kenney*, 83 Wash. 441, 145 Pac. 450, courts are powerless to correct the inequities of valid statutes. That power is in the legislature. Laws passed by that body making an act criminal which theretofore had been lawful, generally provide a wide discretion in the trial judge when passing sentence. This, coupled with the discretion that a prosecuting attorney may exercise in taking up the prosecution of such charges, is as far as the law goes to protect those who may be said to be only technically guilty.

In the case at bar, defendant was charged by a grand jury. The prosecuting attorney had no discretion. He was bound to proceed under the law as he found it to be. The trial judge has assessed a nominal fine.

Having neither the power to declare the defendant not guilty nor to interfere with the discretion of the trial judge in fixing the punishment, we are bound, as was he, to administer the law as it is written.

Affirmed.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.